IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | C.A. No. 10-cr-67 (GMS) |
| MARQUIS A. LOPEZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Shawn A. Weede, Esquire & Mark M. Lee, Esquire, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF DELAWARE, Wilmington, Delaware. Attorneys for the Prosecution.

John S. Malik, LEAD ATTORNEY, John S. Malik, Esquire, Wilmington, Delaware. Attorney for the Defendant.

**OPINION**

June 26, 2013
Wilmington, Delaware

SLEET, Chief, U.S. District Judge

## I.  INTRODUCTION

On July 6, 2010, the Grand Jury for the District of Delaware indicted defendant Marquis A. Lopez ("Lopez") for: (1) possession with the intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) knowing possession of a Glock 22C semiautomatic handgun in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) knowing possession of that handgun after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On September 10, 2012, the court issued an Opinion and Order ("September Opinion") denying Lopez's Second Motion to Suppress Evidence (D.I. 90) and granting the government's *Motion in Limine* to Admit Evidence of Other Acts Pursuant to Federal Rule of Evidence 404(b) (D.I. 82).[1]

---

[1] The court held an evidentiary hearing in connection with Lopez's First Motion to Suppress Evidence (D.I. 28) on December 16, 2010 (*see* D.I. 37), after which the parties filed proposed Findings of Fact and Conclusions of Law (D.I. 39; D.I. 48). As detailed in its September 10, 2012 Opinion and Order ("September Opinion"), Lopez's First Motion to Suppress Evidence (D.I. 28) asked the court to exclude all evidence derived from his arrest—specifically, 19,500 bags of heroin and a firearm discovered in a secret compartment of the car he was driving—because the Wilmington Police Department ("WPD") installed Global Positioning System ("GPS") devices on certain vehicles he used without first obtaining a search warrant. (*Id.*) Lopez asserted that because the WPD's use of the GPS devices was unlawful under the Fourth Amendment, the evidence found during his arrest was likewise tainted by that unlawful activity and is, therefore, inadmissible. Subsequent to this hearing and the parties' filings, the court issued an order scheduling a supplemental evidentiary hearing so that the parties could further develop the record with respect to the WPD's use of GPS devices to track the movements of vehicles Lopez used in the months leading to his arrest. The court convened this supplemental evidentiary hearing on March 23, 2011 (*see* D.I. 58), and the parties subsequently filed proposed Findings of Fact and Conclusions of Law addressing the record from both hearings. (D.I. 64; D.I. 65.) The court issued its Memorandum and Opinion denying Lopez's First Motion to Suppress Evidence on July 6, 2011. (D.I. 66.) As detailed in that Opinion, the court concluded that Lopez's arrest was sufficiently attenuated from any such alleged illegality to remove such "taint" and that the arresting officer did, in fact, have independent probable cause to arrest Lopez. (*Id.*) Consequently, the court denied Lopez's First Motion to Suppress Evidence without addressing the legality of the WPD's use of GPS devices. (*Id.*)

On January 20, 2012, the government filed a *motion in limine* seeking to admit, under Federal Rule of Criminal Procedure 404(b), the electronic surveillance evidence the WPD obtained from the GPS tracking devices. (D.I. 82.) The government sought to introduce this evidence to show: (1) Lopez's knowledge of the heroin and firearm referenced in the indictment that were found in the secret compartment of the vehicle he was driving when arrested;

2

Subsequent to this ruling, the court reopened the record with respect to Lopez's Second Motion to Suppress, in consideration of recent district court decisions on similar suppression issues.[2] Specifically, the court directed the parties to address the relevance of: (1) the lack of "binding appellate precedent" in the Third Circuit on the issue of warrantless GPS tracking; and (2) the support on which the officer(s) relied in deciding to employ the GPS devices without a search warrant, so that it may comprehensively address the good faith exception holding in this case. The parties subsequently submitted briefing on these issues. (D.I. 111; D.I. 114; D.I. 116; D.I. 118.) After having considered the testimony elicited during the evidentiary hearings, the arguments presented in these submissions, and the relevant law, the court will reaffirm its decision and deny Lopez's Second Motion to Suppress Evidence. (D.I. 90.)

## II.    CONCLUSIONS OF LAW[3]

As detailed in the court's September Opinion (D.I. 99), Lopez asserts that the evidence obtained from the WPD's use of GPS devices must be suppressed as the product of an unreasonable

---

and (2) Lopez's intent and *modus operandi* with respect to the charged offenses. (*Id.*) On January 23, 2102, the Supreme Court issues its opinion in *United States v. Jones*, wherein it concluded that the use of a GPS device by law enforcement officers to monitor the movements of a vehicle constitutes a "search" under the Fourth Amendment. *United States v. Jones*, 132 S. Ct. 945 (2012). In light of this holding and in response to the government's motion, Lopez filed his second, instant motion requesting that the court suppress all evidence gathered via the WPD's GPS surveillance because the GPS devices were employed without a warrant and were, therefore, unlawful. (D.I. 90.) The parties submitted briefing addressing the *Jones* holding and its impact on the GPS electronic surveillance in this action, which the court considers in this Opinion and Order. (D.I. 90; D.I. 91; D.I. 92; D.I. 96; D.I. 98.)

[2] Specifically, the court referenced two decisions from the U.S. District Court for the Eastern District of Pennsylvania, *United States v. Katzin* and *United States v. Ortiz*, wherein those courts found that the good faith exception to the exclusionary rule does not apply in warrantless GPS cases. *See* C.A. No. 11-251-08, 2012 WL 2951391 (E.D. Pa. July 20, 2012); C.A. No. 11-226, 2012 WL 1646894 (E.D. Pa. May 9, 2012). In those cases, the courts examined such considerations as: (1) the lack of binding appellate precedent in the Third Circuit on the warrantless GPS use issue; (2) the support on which officers relied in the absence of such binding precedent; and (3) the degree of ease with which the officers who attached the GPS devices could have obtained a warrant without thwarting their investigation. (*See* D.I. 105.) In light of these cases, the court reopened the record so that it could supplement its September Opinion to include consideration of the applicability of these and other factors in its good faith exception analysis. For the reasons that follow, the court reaffirms its original decision, and concludes that the good faith exception is applicable in this case.

[3] The court does not include Findings of Fact in this Opinion, as the facts relevant to this analysis were found and detailed in the court's earlier Opinions in connection with Lopez's Motion to Suppress Evidence (D.I. 28) and his Second Motion to Suppress Evidence (D.I. 90). *See* D.I. 66 at 2-6; D.I. 99 at 3-8.

3

search and seizure in violation of the Fourth Amendment. (D.I. 91 at 2.) Lopez further maintains in his supplemental briefing that the court erred in concluding that the good faith exception provides for admissibility in this case because: (1) as explained in *United States v. Katzin*[4] and *United States v. Ortiz*[5], absent binding appellate precedent in the Third Circuit, the good faith exception to the exclusionary rule cannot apply; (2) Detective Fox did not act in reasonable good faith because he employed the GPS devices before consulting with superiors for advice and/or approval, necessitating examination of his "subjective reasons" for doing so (D.I. 114 at 13); and (3) "it is wholly appropriate for this [c]ourt to . . . determine what, if any, case law or other relevant information on which Detective Fox, his supervisors, or the Delaware Attorney General's Office relied in February 2010 in concluding that a GPS device could be installed [] without the authorization of a search warrant" (*id.* at 3).

Conversely, the government maintains that the court should reaffirm its finding that the good faith exception does apply in this case because: (1) the Third Circuit has established that a court can determine if an officer's actions were reasonable by considering out-of-circuit case law and, therefore, the court should ignore the reasoning advanced in *Katzin* and *Ortiz* as unsupported by Third Circuit precedent; and (2) the subjective legal knowledge and/or deliberative process of Detective Fox and the individuals with whom he conferred is irrelevant to the reasonableness analysis, as the court is tasked with assessing that legal knowledge and deliberative process through an objective, rather than subjective, lens. (D.I. 111 at 10-13.)

### A. The State of the Law: February 2010 Through June 2010[6]

---

[4] C.A. No. 11-251-08, 2012 WL 2951391 (E.D. Pa. July 20, 2012).

[5] C.A. No. 11-226, 2012 WL 1646894 (E.D. Pa. May 9, 2012).

[6] According to Detective Fox's testimony during the June 25, 2013 Supplemental Evidentiary Hearing, the WPD began using GPS devices to monitor Lopez's vehicles in mid-February 2010. *See* Transcript of June 25, 2013 Supplemental Evidentiary Hearing ("June Tr.") (D.I. 121), at 3:9-12. As noted in the court's September Opinion, Lopez was arrested on June 3, 2010 and the WPD used the GPS trackers until that date. *See* March 23, 2011 Supplemental Evidentiary Hearing ("March Tr.") (D.I. 58) at 23:18-22.

4

The Fourth Amendment protects the right of individuals to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the court detailed in its September Opinion, the Supreme Court, in *United States v. Jones*, found that "installation of a GPS device on a target's vehicle, and [] use of that device to monitor the vehicle's movements on public streets" is a "search" under the Fourth Amendment. *See United States v. Jones*, 132 S. Ct. 945, 948-49 (2012). For the reasons expressed in its September Opinion, the court concludes that, in light of the Supreme Court's holding in *Jones*, the WPD's use of GPS devices on Lopez's vehicles did constitute a search. Importantly, however, and as explained in that opinion, a warrantless "search" does not automatically necessitate or result in the suppression of evidence. (D.I. 99 at 15-16 (citing *Herring v. United States*, 555 U.S. 135, 137 (2009)).)

Instead, as the Supreme Court stated in *Herring v. United States*, the "exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence.'" (*Id.* (citing *Herring*, 555 U.S. at 141).) Supreme Court precedent dictates that this deterrence is needed where the law enforcement action in question constitutes "deliberate, reckless, and grossly or systematically negligent police conduct" and that, absent such "culpable conduct," the exclusionary rule should not be used simply to remedy a Fourth Amendment violation. *See Davis v. United States*, 131 S. Ct. 2419, 2426-27 (2011). To this end, the exclusionary rule does not apply when "police act with an objectively reasonable good faith belief that their conduct is lawful." *See id.* at 2427.

As noted, Lopez challenges the court's application of the good faith exception as incorrect because, as detailed in *Katzin* and *Ortiz*, there was no binding appellate precedent in the Third Circuit at the time of the WPD's action indicating that warrantless GPS monitoring was constitutional. Specifically, Lopez cites to the Supreme Court's decision in *United States v. Davis*,

5

wherein the Court established that application of the exclusionary rule exception is appropriate where there is "binding appellate precedent" confirming the constitutionality of a later-decided Fourth Amendment violation. *See Davis*, 131 S. Ct. at 2423-24. Therefore, because the Court specifically referred to the required precedent in *Davis* as "binding," Lopez argues that this exception cannot be used here and no other exception applies, necessitating suppression. In support of this argument, Lopez also notes that Justice Sotomayor, in her concurring opinion, stated that the question of whether the exclusionary rule applies when the law relied upon is unsettled is a "markedly different question." *Id.* at 2435 (Sotomayor, J., concurring). Thus, Lopez contends that applying the good faith exception in his case would be "unjustified and overly expansive" in its interpretation of *Davis*, "would subvert [its] clear holding," "exceed the bounds of the exclusionary rule, and prove unworkable in practice." (D.I. 114 at 4.) After consideration of the parties' submissions and the relevant law, the court disagrees.

The court is not persuaded by Lopez's assertions that applying the good faith exception in this case would extend the exception to unsettled areas of the law, subvert *Davis*' holding, and prove unworkable in practice. First, and as noted in its September Opinion, at the time Detective Fox installed the WPD's GPS devices on Lopez's vehicles, the law was not "unsettled" as Lopez describes. To the contrary, at the time the GPS devices were attached to Lopez's vehicles, there were no Federal Courts of Appeals decisions indicating that the warrantless use of GPS tracking devices was unreasonable or unlawful.[7] In fact, prior to the D.C. Circuit's August 6, 2010 decision in *United States v. Maynard* that warrantless GPS use is unreasonable, every circuit court to have

---

[7] The court notes that Lopez is incorrect as to this timing in his Answering Brief. (D.I. 114 at 8 n.2.) Specifically, in seeking to distinguish the instant action from *United States v. Baez*, Lopez notes that "*Baez* is readily distinguishable because its search occurred when *Maynard* had not yet split the circuits." (*Id.*) This representation, however, does not distinguish this case from *Baez* or undermine the *Baez* holding, as the search here also occurred before the D.C. Circuit issued a ruling in *Maynard*.

6

considered the question concluded that police do not need to obtain a warrant to install and monitor a GPS device on the exterior of the car, so long as that car remains on public roads.[8] Notably, even the commentary to Federal Rule of Criminal Procedure 41, which governs warrants and was adopted by the Supreme Court pursuant to 28 U.S.C. § 2072(a), discusses the same conclusion of legality, noting that a warrant is only required "if the device installed (for example, in the trunk of the defendant's car) or monitored (for example, while the car is in the defendant's garage) in an area in which the person being monitored has a reasonable expectation of privacy." *See* FED. R. CRIM. P. 41 (Advisory Committee's note to the 2006 amendments).

Moreover, and as detailed more fully in the court's September Opinion, at the time the GPS devices were installed on Lopez's vehicles, several federal courts had approved warrantless installation and monitoring of GPS devices on vehicles that remained on public roads based, at least in part, on the Supreme Court's holdings in *United States v. Knotts* and *United States v. Karo*. *See* D.I. 99 at 19; *see also United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007); *United States v. McIver*, 186 F.3d 1119, 1127 (9th Cir. 1999); *United States v. Michael*, 645 F.2d 252, 257-59 (5th Cir. 1981) *(en banc)*; *United States v. Coombs*, 2009 WL 3823730 (D. Ariz. Nov. 12, 2009); *Morton v. Nassau City Police Dept.*, 2007 WL 4264569 (E.D.N.Y. Nov. 27, 2007); *United States v. Coulombe*, 2007 WL 4192005 (N.D.N.Y. Nov. 26, 2007); *United States v. Moran*, 349 F. Supp. 2d 425, 467 (N.D.N.Y 2005). In addition, as of June 2010, there was no State of Delaware case law opining that the installation and use of a GPS tracking device to monitor a vehicle's location while traveling on public roads required a warrant. Indeed, the first Delaware case to consider the issue was decided six months after Lopez's arrest. *See State v. Holden*, 2010 WL 5140744, at *3-

---

[8] As noted in the court's September Opinion, importantly, *United States v. Maynard* was issued two months after Lopez's arrest. (D.I. 99 at 19.)

7

*8 (Del. Super. Dec. 14, 2010) (concluding that prolonged warrantless GPS tracking is unreasonable under the Delaware Constitution).

In view of the foregoing, the court disagrees with Lopez's characterization of the law as unsettled, as no court in Delaware or in the Third Circuit had found the warrantless use of a GPS tracker to be unconstitutional as of June 2010. In addition, the court disagrees with his assertion that denying suppression would extend the good faith exception to unsettled areas of the law and, in so doing, subvert the *Davis* holding. Rather, it is clear to the court that while binding appellate precedent in the Third Circuit[9] was absent at the time Detective Fox installed GPS devices on Lopez's vehicles, there was no circuit split on this issue or even a single federal appellate court decision concluding that GPS installation and monitoring constitutes a search. Thus, because the law from February 2010 through June 2010 had not been subject to varying judicial interpretations,

---

[9] The court notes that while the Third Circuit had not issued an opinion directly answering the question of whether the use of GPS on a vehicle constitutes a search, its decision in *In the Matter of the Application of the United States of America for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government* ("*In the Matter of the Application*") is instructive. 620 F.3d 304 (3d Cir. 2010). In *In the Matter of Application*, the Third Circuit considered whether the government has to make a showing of probable cause in order to obtain cell site location information ("CSLI") under the Stored Communications Act ("SCA"), 18 U.S.C. § 2703(d), and ultimately concluded that it did not. *Id.* at 313. Instead, the government must meet the lesser "relevant and material" standard set out in the SCA. In support of this conclusion, the Third Circuit discussed the interplay between CSLI and tracking devices and, after addressing the Supreme Court's holdings in *Knotts* and *Karo*, stated that:

> We cannot reject the hypothesis that CSLI may, under certain circumstances, be used to approximate the past location of a person. If it can be used to allow the inference of present, or even future, location, in this respect CSLI may resemble a tracking device that provides information as to the actual whereabouts of the subject. The *Knotts/Karo* opinions make clear that the privacy interests at issue are confined to the interior of the home. There is no evidence in this record that historical CSLI, even when focused on cell phones that are equipped with GPS, extends to that realm. We therefore cannot accept the MJ's conclusion that CSLI by definition should be considered information from a tracking device that, for that reason, requires probable cause for its production.

*Id.* at 1312-13. The Third Circuit also noted that there may be a limited circumstance in which the government seeks cell site location information or GPS phone date information, which could implicate the Fourth Amendment, "if it would disclose location information about the interior of the home." *Id.* at 317. Here, again, the court relied on *Karo* for the proposition that the Fourth Amendment is implicated only if an electronic device—there CSLI—reveals whether a particular article—or a person, for that matter—is in an individual's home at a particular time." *Id.* at 318 (citing *Karo*, 468 U.S. at 716). Thus, while the court agrees with Lopez that there was no binding appellate precedent in the Third Circuit at the time the WPD used GPS devices to track Lopez's vehicles, it notes that *In the Matter of the Application* seemingly demonstrates the Third Circuit's determination that *Knotts* and *Karo* support the conclusion that the warrantless use of electronic tracking devices was constitutional so long as the monitoring did not reveal information regarding the inside of a residence.

the court finds that that law, though not binding, was arguably "settled," in that all courts to have considered the issue agreed that warrantless GPS use was constitutional so long as the vehicle was on public roads. Thus, the court finds that applying the good faith exception in this case is not contrary to the Supreme Court's rationale in *Davis*, nor does it implicate the Court's concern that the good faith exception be applied only in cases where the law was "settled."[10]

### B. The Third Circuit's Use of Out-of-Circuit Precedent to Establish Reasonableness

The court's conclusion is further supported by Third Circuit cases establishing that it, and courts in the Circuit, can rely on out-of-circuit precedent in assessing whether an individual's actions are objectively reasonable.[11] This precedent is important here because, at the time that the GPS devices were installed on Lopez's vehicles, courts in other circuits had concluded that the

---

[10] Lopez maintains that allowing the good faith exception in the absence of binding precedent would have the effect of providing law enforcement agencies and officers with the authority to "rel[y] on any body of persuasive, unsettled law" and "effectively[,] choose which circuit courts to listen to and which to ignore." (D.I. 114 at 3, 5.) The court does not share this concern, however, because it is tasked with assessing the state of the law at the time of the GPS installation and monitoring. As detailed above, there was no judicial disagreement as to whether warrantless GPS monitoring was constitutional in February 2010 when the first GPS device was installed. Thus, the court's application of the good faith exception in this case clearly cannot be interpreted to mean that it would apply the exclusionary rule on a different set of facts wherein a circuit split existed at the time of the GPS installation. In this latter scenario, Fourth Amendment law would be appropriately characterized as unsettled and, in fact, application of the exception would potentially prove inconsistent with the *Davis* holding. The court, therefore, disagrees with Lopez's assertion that its holding would "subvert the clear holding in *Davis*, exceed the bounds of the exclusionary rule, and prove unworkable in practice." (*Id.* at 4.)

The court also rejects Lopez's assertion that the court should limit application of the good faith exception to cases in which there is binding appellate precedent because to do otherwise would "complicate the work for police and prosecutors, for whom bright-line rules provide great benefits." (*Id.* at 10 (citing *Thornton v. United States*, 541 U.S. 615, 620-24 (2004).) To the contrary, the court applies the good faith exception in this case because, despite the absence of "binding" Third Circuit precedent, there was no disagreement in the federal or Delaware courts that warrantless use of GPS devices was constitutional. The court does not apply the good faith exception in a scenario where the law was unsettled and, therefore, finds its application sufficiently bright-line that law enforcement and prosecutors will not be tasked with applying a "muddled standard" or deciding which circuit's case law to apply. (*Id.* at 10-11)

[11] Lopez maintains that applying the good faith exception in this case would extend the holding in *Davis* to "merely persuasive authority, especially in light of a circuit split." (*Id.* at 6.) For the reasons set forth in this section, the court disagrees with Lopez's contention that denying suppression in this case would expand the good faith exception and, in so doing, undermine the *Davis* holding. The court similarly disagrees with Lopez's assertion that there was a circuit split at the time the WPD installed GPS devices on Lopez's vehicles because, as noted above, there was no disagreement among the circuit courts in February 2010 and law enforcement's "good faith" is assessed at the time of the installation.

installation and use of a GPS without a warrant did not violate the Fourth Amendment. *See Garcia*, 474 F.3d at 998 (concluding that no warrant was required to install a non-invasive GPS tracking device on a vehicle while it was in a public place); *McIver*, 186 F.3d at 1127 (finding that no "seizure" occurred where a slap-on tracking device did not "deprive [the defendant] of dominion and control" of his vehicle and did not cause "any damage to the electronic components of the vehicle"); *Michael*, 645 F.2d at 256 (concluding that the warrantless attachment of a tracking beeper to a vehicle was constitutional because it was minimally intrusive and installed while the vehicle was parked in a public place); *see also* FED. R. CRIM. P. 41 (Advisory Committee note to the 2006 amendments).

Specifically, and as the government details, the Third Circuit in *United States v. Pavulak*[12] and *United States v. Duka*,[13] concluded that it may rely on out-of-circuit precedent to determine whether officers' actions were objectively reasonable and, thus, within the scope of the good faith exception to the exclusionary rule.[14] For instance, in *Pavulak*, the Third Circuit held that a search warrant affidavit—which stated that an informant observed the defendant viewing "child pornography," without defining that term or describing the images in question—was insufficient to establish probable cause that the defendant was engaged in unlawful activity. *See Pavulak*, 700 F.3d at 661-63. In reaching this conclusion, the Third Circuit relied on recent decisions holding that conclusory descriptions, without more, do not provide a magistrate with sufficient information to conclude that computer images meet the statutory definition of child pornography. *Id.* Despite this finding, the Third Circuit held that the good faith exception applied because it was reasonable

---

[12] 700 F.3d 651 (3d Cir. 2012).

[13] 671 F.3d 329 (3d Cir. 2011).

[14] *See Pavulak*, 700 F.3d at 664; *Duka*, 671 F.3d at 347 n.12 (noting that the "objective reasonableness of the officers' reliance" on the Foreign Intelligence Surveillance Act was "bolstered by the fact that the particular provision at issue" had been "reviewed and declared constitutional by several courts" outside the Third Circuit (citation omitted)).)

10

for the officers who executed the warrant to believe that the affidavit was sufficient, despite lacking notable detail, because the "cases leading [the court] to conclude that the warrant was insufficient . . . were not decided until 2010 and 2011." *Id.* at 664. More specifically, despite the absence of binding appellate precedent in the Third Circuit at the time the warrants were sought, the court found it persuasive that "the affidavit's allegations would have been sufficient in the Eighth Circuit at the time," even though it did not adopt the Eighth Circuit's reasoning. *Id.* Therefore, the court held that the officers' reliance on the warrant was defensible and within the scope of the good faith exception based on out-of-circuit precedent where there was no Third Circuit precedent available.[15] *Id.*

Likewise, in *United States v. Duka*, the defendants filed a motion to exclude evidence obtained pursuant to a section of the Foreign Intelligence Surveillance Act ("FISA"), on the grounds that the provision in question violated the Fourth Amendment. *See Duka*, 671 F.3d at 336. In response to this assertion, the Third Circuit concluded that suppression of the evidence

---

[15] In reaching this conclusion, the court notes that it disagrees with Lopez's characterization of *Pavulak* as inapplicable to the instant matter because the court in that case relied on Third Circuit, not out-of-circuit law. Specifically, Lopez argues that "the conclusion that the officers acted in good faith was not based on out-of-circuit precedent" and was, "[i]nstead, determined that the officers relied in good faith on a warrant where the warrant application lacked specific details of how images in question constituted child pornography based upon 'the state of [Third] Circuit law at the time.'" (D.I. 114 at 9 (citing *Pavulak*, 700 F.3d at 663-64).) However, Lopez's emphasis on the fact that the agents in *Pavulak* obtained a warrant is misplaced. Rather, the Third Circuit in *Pavulak* considered out-of-circuit case law to be relevant to the good faith analysis particularly where there is no binding precedent that outlaws the police actions in question. *See Pavulak*, 700 F.3d at 664. Specifically, and as noted above, the court in *Pavulak* concluded, based on its own recent cases, that conclusory descriptions alone do not provide a magistrate with sufficient information to meet the statutory definition of child pornography. *Id.* at 663-65. The court found that the evidence should not be excluded based on the good faith exception because it was objectively reasonable to believe that the affidavit was sufficient, since the precedent leading the Third Circuit to conclude otherwise was not decided until after the warrant was sought and issued. *Id.* at 664. In reaching this conclusion the *Pavulak* court also noted that "suppression is not justified when officers act in the 'reasonable belief' that their conduct d[oes] not violate the Fourth Amendment." *See id.* at 663 (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984).) In determining whether the allegations in the affidavit were sufficient and relied upon in good faith, the court found persuasive that "the affidavit's allegations would have been sufficient in the Eighth Circuit at the time." *Id.* at 664. In fact, the court noted that the officers' actions were defensible "in light of 'the state of Circuit law at the time.'" *Id.* (citing *United States v. Hodge*, 246 F.3d 301, 307-08 (3d Cir. 2001)). Thus, this court concludes that the Third Circuit did, in fact, look to out-of-circuit case law to determine reasonableness and assess good faith in the absence of binding appellate precedent. Here, because there was no binding appellate precedent on whether GPS installation and monitoring constituted a "search" during the relevant time period, the court finds *Pavulak*'s reliance, at least in part, on out-of-circuit precedent to assess good faith to be relevant.

11

would be inappropriate because the officers acted "in objectively reasonable reliance on a statute," and, as a result, suppression "would not further the purposes of the exclusionary rule, even if that statute is later declared unconstitutional." *Id.* (citing *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987))). The Third Circuit further noted that the "objective reasonableness of the officers' reliance" on FISA was "bolstered by the fact that the particular provision at issue" had been "reviewed and declared constitutional by several courts" outside the Third Circuit. *Id.* at 347 n.12 (citation omitted). Thus, the court agrees with the government that the Third Circuit in *Duka* again relied, at least in part, on out-of-circuit precedent to support its finding of objective reasonableness.[16]

In view of the state of the law from February 2010 through June 2010 and Third Circuit precedent allowing for consideration of out-of-circuit case law to assess reasonableness, the court concludes that application of the good faith exception is appropriate in this case despite the absence of binding appellate precedent. In reaching this conclusion, the court notes its agreement with several courts that have reached similar conclusions since *Jones* and have found that limiting the good faith exception to instances where law enforcement acted consistent with only "binding"

---

[16] The court notes that, in reaching this conclusion, it rejects Lopez's assertion that *Duka* is distinguishable from the instant action because "a statute enacted by Congress is not analogous to an unanswered question on the frontier of constitutional law." (D.I. 114 at 9 n.3.) Specifically, the court disagrees with Lopez's position that, at the time Detective Fox installed the GPS monitors on his vehicles, the question of whether the use of a GPS in public was a search was "unanswered." To the contrary, as the court notes in its earlier analysis, every Federal Court of Appeals to have decided this question by June 2010 had concluded that, in light of Supreme Court precedent, a warrant was not required to install and monitor a GPS tracking device on the exterior of a car if installation occurred when the car was in public. (D.I. 19 at 20-23.) Indeed, even the commentary to Rule 41, which governs warrants and was adopted by the Supreme Court pursuant to 28 U.S.C. § 2072(a), maintains the same view. Thus, the court disagrees with Lopez's assertion that out-of-circuit precedent can be used to interpret a statute, but not the Constitution. Rather, as *Duka* demonstrates, such precedent can become relevant to the good faith analysis when it would cause an objective officer to believe that his or her actions were lawful. *See Duka*, 671 F.3d at 347 n.12. Indeed, other courts post-*Jones* have found such out-of-circuit precedent to be relevant where, as here, courts "universally considered" the warrantless use of GPS monitoring to be "constitutionally permissible" at the time of the GPS use in question. *See United States v. Rose*, No. 11-10062-NMG, 2012 WL 4215868, *5 (D. Mass. Sept. 14, 2012) (noting that "[a]t the time agents installed three of the four GPS devices, circuit courts were unanimous in holding that GPS tracking did not so much implicate, never mind violate, the Fourth Amendment" and that to deny the good faith exception due to lack of "binding appellate precedent" would be "unworkable in practice").

precedent would result in an "untenable" and "inflexible" approach at odds with the purpose of the exclusionary rule.[17] Indeed, as noted above, application of the exclusionary rule is not the necessary result of a constitutional violation but is, instead, a rule applied to deter the culpable conduct of law enforcement.[18] *See Herring*, 555 U.S. at 141; *Davis*, 131 S. Ct. at 2426-27. Here, for the reasons set out more fully below, the court finds that Detective Fox and the WPD did not act culpably or in bad faith in installing GPS devices on Lopez's vehicles, particularly in light of the fact that no federal or Delaware court had concluded such warrantless installation was unconstitutional during the relevant time period.

---

[17] *See United States v. Guyton*, No. 110271, 2013 WL 55837, at *5 (E.D. La. Jan. 3, 2013); *see also United States v. Ford*, No. 1:11-CR-42, 2012 WL 5366049, at *11 (E.D. Tenn. Oct. 30, 2012); *United States v. Aispuro-Haros*, No. 11-2293UH (D.N.M. Oct. 24, 2012); *United States v. Rose*, No. 11-100620-NMG, 2012 WL 4215868, at *3-5 (D. Mass. Sept. 14, 2012); *United States v. Oladosu*, Cr. No. 10-056-01 S, 2012 WL 3642851, at *5-10 (D.R.I. Aug. 21, 2012); *United States v. Leon*, 856 F. Supp. 2d 1188, 1192-93 (D. Haw. 2012). The court recognizes that some district courts have concluded that the good faith exception should not be applied except where there was binding appellate precedent. *See United States v. Robinson*, No. S2-4:11CR00361 AGF, 2012 WL 4893643, at *12-15 (E.D. Mo. Oct. 15, 2012); *Ortiz*, No. 11-251-08, 2012 WL 2951391 (E.D. Pa. July 20, 2012); *United States v. Lujan*, No. 2:11CR11-SA, 2012 WL 2861546, at *3 (N.D. Miss. July 11, 2012); *United States v. Lee*, 2012 WL 1880621, at *6-10 (E.D. Ky. May 22, 2012); *Katzin*, No. 11-226, 2012 WL 1646894 (E.D. Pa. May 9, 2012). The court disagrees with this conclusion, however, where, as here, no court had concluded that a warrant was necessary to use GPS devices. Notably, though Lopez argues that *Katzin* supports the suppression of evidence in this case, the facts in *Katzin* are distinguishable from those in the instant action. For instance, in *Katzin* the GPS devices were installed four months after the D.C. Circuit found warrantless GPS use unconstitutional in *United States v. Maynard*, such that the law at the time of that installation was indeed "unsettled" due the circuit split on the issue. *See Maynard*, 615 F.3d at 557-59. While Lopez is correct that allowing the good faith exception under those circumstances would, in essence, allow law enforcement to "choose which circuit court to listen to and which to ignore," the facts in this case did not present WPD law enforcement with that dilemma as there was no disagreement amongst the circuits.

[18] Specifically, the court concludes that limiting application of the good faith exception as Lopez requests would undermine the rationale advanced in both *Herring* and *Davis* by ignoring the Court's emphasis in those opinions on deterring culpable conduct. *See Davis*, 131 S. Ct. at 2427 ("The basic insight of the *Leon* line of cases is that the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." (quoting *Herring*, 555 U.S. at 143).) The Supreme Court has recognized that suppression imposes a "costly toll upon truth-seeking and law enforcement objectives" by letting guilty and possibly dangerous defendants go free" and has instructed district courts tasked with assessing suppression issues to exclude evidence only when "the benefits of deterrence . . . outweigh the costs." *See Herring*, 555 U.S. at 141-42. Therefore, a court should not suppress evidence where "police act with an objectively reasonable good faith belief that their conduct was lawful." *See Davis*, 131 S. Ct. at 2427. In consideration of these opinions and the facts before it, the court concludes that application of the exclusionary rule is appropriate where, as here, no state or federal court had concluded that the installation of a GPS device without a warrant was unconstitutional prior to GPS installation and, in fact, the federal courts to have considered the issue held that a warrant was not required. Thus, while the court recognizes that there will be instances where law enforcement's reliance on non-binding precedent will not satisfy the requirements of the good faith exception, it finds that application of this exception is appropriate in *this* case and is consistent with the purpose of the exclusionary rule.

13

### C. The Consideration of Subjective Legal Knowledge & Deliberative Process in the Good Faith Exception Analysis

Lopez argues that it is "wholly appropriate" for the court to consider "what, if any, case law or other relevant information on which Detective Fox, his superiors, or the Delaware Attorney General's Office relied in February of 2010" in concluding that it was unnecessary to obtain a warrant before installing and monitoring a GPS device. (D.I. 114 at 3.) Specifically, Lopez maintains that because Detective Fox did not consult with his supervisors and the Delaware Attorney General until after a GPS device was installed, his "actions cannot be assumed to have been undertaken in good faith reliance on any supporting authority" or approval, making "it [] necessary for the [c]ourt to examine his subjective reason[ing]."[19] (*Id.* at 3, 13.) In response, the government challenges that: (1) Lopez has misread the record with respect to Detective Fox's testimony in that Detective Fox did, in fact, consult with his superiors prior to installing the first GPS device[20]; and (2) that the "subjective legal knowledge" of Detective Fox and his colleagues at the WPD "regarding the warrantless use of GPS devices to track [] Lopez's vehicles is beyond the scope of what is relevant to the [c]ourt's good faith analysis of Detective Fox's actions." (D.I. 114.) The court agrees.

---

[19] In support of this assertion, Lopez cites to the five Supreme Court cases establishing exceptions to the exclusionary rule to demonstrate that the Court requires "reliance by a law enforcement officer upon some type of authority to justify his actions." (D.I. 114 at 13-14 (citing *United States v. Leon*, 468 U.S. 897 (1984) (allowing for good faith exception where an officer relied in good faith on an improvidently granted search warrant); *Illinois v. Krull*, 480 U.S. 340 (1987) (good faith exception applies where the statute relied upon is later determined to be unconstitutional); *Davis*, 131 S. Ct. 2427 (concluding that the good faith exception applies where binding appellate precedent confirmed the constitutionality of the action in question); *Arizona v. Evans*, 514 U.S. 1 (1995) (applying the good faith exception where reliance on erroneous computer information input into a computer database maintained by judicial employees resulted in the constitutional violation); *Herring*, 555 U.S. 135 (concluding that the good faith exception should be applied where police employees made mistakes in maintaining records in a warrant database and there was no evidence of recurring police negligence)).

[20] Specifically, the government maintains that while Detective Fox did not consult with the Delaware Attorney General's Office until after the first device was installed, he did consult with his superiors before the first installation. (D.I. 118 at 2.) Detective Fox's testimony at the June 25, 2013 Supplemental Evidentiary Hearing confirmed this assertion. *See* June Tr. at 3:9-5:7.

14

First, while Detective Fox's testimony was initially unclear as to when he consulted with his superiors in determining that a warrant was not required,[21] he clarified his testimony during the Supplemental Evidentiary Hearing of June 25, 2013. (*see* D.I. 121 at 3:9-5:7.) Specifically, Detective Fox consulted with his superiors in the WPD before he installed the first GPS device on Lopez's Passat. Detective Fox then later consulted with the Delaware Attorney General's Office at the end of February 2010, after the WPD was monitoring Lopez's vehicle. Because Detective Fox consulted with his superiors prior to installing the first GPS device, the court finds that he was, in fact, acting in reliance on some authority. (D.I. 114 at 13; D.I. 118 at 2.) Notably, this finding, though not dispositive in the analysis, supports the conclusion that Detective Fox was acting in good faith. *See Messerschmidt v. Millender*, 132 S. Ct. 1235, 1249 (2012) (concluding that the officer's consultation with superiors and a deputy district attorney with regard to a warrant application provided "further support for the conclusion that an officer could have reasonably believed" that his actions were lawful).

Second, the court further concludes that it should not explore the WPD and Detective Fox's subjective reasons for concluding that GPS devices could be used to monitor a vehicle without a warrant. Similarly, it would be inappropriate to explore their deliberative process. Specifically, and as the government correctly notes, the Supreme Court has established that the good faith exception turns on whether an officer's conduct was "objectively reasonable." *See Herring*, 555 U.S. at 145-46. This inquiry requires a court to determine "whether a reasonably well trained officer would have known that the [conduct at issue] was illegal." *Id.* (internal citations omitted); *see also Leon*, 468 at 919 n.20. To this end, the "subjective awareness" of a particular officer does not bear on the analysis and is not relevant to the good faith determination. Rather, an officer's

---

[21] *See* D.I. 58 at 28-29.

15

objective reasonableness will depend on the state of the law at the time of the investigation in question. In addition, a finding of objective reasonableness can be further supported by an officer's consultation with his or her superiors. In this context, the Supreme Court has repeatedly applied the good faith exception in cases where officers acted in objectively reasonable reliance on the errors of others. *See supra* note 19.

Given the facts of this case and the relevant law, the court concludes that the WPD and Detective Fox's decision to use GPS devices to monitor Lopez's vehicles without a warrant was objectively reasonable in that no federal or state precedent informed them that a warrant was necessary. Reinforcing the objective reasonableness of his conclusion, Detective Fox consulted with his supervisors and, later, with the Delaware Attorney General's Office, all of which confirmed the Detective's view that a warrant was not needed so long as the vehicle in question was in public. Indeed, the court finds no evidence in the record that Detective Fox or his WPD colleagues acted culpably or in a way requiring resort to the prophylaxis of suppression.[22] To the contrary, it is clear to the court that the law enforcement officers in this case believed their conduct to be lawful and sought to adhere to the requirements of the Fourth Amendment. Consequently, the court finds that application of the good faith exception to be appropriate.

### III. CONCLUSION

---

[22]

The basic insight of the *Leon* line of cases is that the deterrence benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue. *Herring*, 555 U.S. at 143. When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for the Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. *Id.* at 144. But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, *Leon, supra* at 909 (internal quotation marks omitted), or when their conduct involves only simple, "isolated" negligence, *Herring, supra* at 137, the "deterrence rationale loses much of its force," and "exclusion cannot pay its way." *See Leon, supra* at 919, 908 n.6 (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1957)).

*See Davis*, 131 S. Ct. at 2427-28.

16

For the foregoing reasons, the court hereby reaffirms its decision (D.I. 99) and denies Lopez's Second Motion to Suppress Evidence (D.I. 90) and grants the government's First *Motion in Limine* to Admit Evidence of Other Acts Pursuant to Federal Rule of Evidence 404(b) (D.I. 82).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 10-cr-67 (GMS) |
| MARQUIS A. LOPEZ, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED THAT:

1. The defendant's Second Motion to Suppress Evidence (D.I. 90) is DENIED;

2. The government's *Motion in Limine* to Admit Evidence of Other Acts Pursuant to Federal Rule of Evidence 404(b) (D.I. 82) is GRANTED.

Dated: June 26, 2013

CHIEF, UNITED STATES DISTRICT JUDGE